IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

E.V. DRAKE,                                *

Plaintiff                                  *

v                                          *       Civil Action No. ELH-19-2669

TRAVELERS INDEMNITY COMPANY, et al *

Defendants                                 *
                                         ***

# MEMORANDUM

The self-represented plaintiff, E.V. Drake, filed a Complaint on September 18, 2019, approximately 80 pages in length. ECF 1. The Complaint names numerous defendants, including President Donald J. Trump, Vice President Michael Pence, Melania Trump, Karen Pence, the spouses of several Supreme Court Justices, the spouses of several judges of the United States District Court for the Eastern District of Texas, as well as Travelers Indemnity Co. and other defendants that appear to be Texas corporations or Texas government entities.

Drake alleges, *inter alia*, that he "possesse[s] gifts of foresight . . . . [and] has predicted the majority of his close family members [sic] death, and has even described the day of their funerals before the event took place. These were not guesses, but a true gift bestowed upon Plaintiff by the Almighty." ECF 1 at 12. He predicts two coming disasters: an earthquake in California and hurricanes in the Gulf Coast and East Coast. *Id*. at 11. Further, plaintiff alleges that he contacted the President and the Vice-President and their wives regarding his predictions and his ability to foresee the future, but they took no action. *Id*. As a result, plaintiff maintains that the United States suffered the worst hurricanes in the history of the country as well as the wild fires in California. *Id*. at 14. Plaintiff contends there is time to avert the other disasters he has foreseen and that it is negligence, a breach of duty, a violation of due process, and the intentional infliction of

emotional distress for the President, Vice-President, and their wives to fail to meet with plaintiff and prepare for his predictions. *Id*. at 15-22, 75.

Additionally, plaintiff asserts that the administration "has failed the American people . . . ." *Id.* at 19. He states: "The rejection of spiritual gifts by nonbelievers is not something uncommon but to be provided with information that American lives are at risk, as commander in chief and failed to take some action to at least investigate the matter is a breach of duties." *Id.* at 18-19.

Further, plaintiff alleges that the federal judges in the Eastern District of Texas acted improperly in denying motions plaintiff filed in another case, and in entering orders in that case. ECF 1 at 58. He also claims that state and federal judges harbor racial bias and intentionally harmed him as a result of action taken in his other case. *Id.* at 66. Moreover, he seeks declaratory relief against several of the judges and he asks that they be enjoined from hearing any of his cases. *Id*. at 67- 69.

Additional allegations are included in the Discussion.

Plaintiff has also filed a motion seeking my recusal. ECF 2. He claims that I have conspired with the Clerk of the Court to withhold the issuance of summonses. *Id.* at 4. He cites 28 U.S.C. § 144 and § 455. *Id.* at 3.[1]

Plaintiff has paid the filing fee. And, the Court is mindful of its obligation to construe liberally the filings of a pro se litigant, which are held to less stringent standards than filings drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886

---

[1] Plaintiff has also filed a Petition for Writ of Mandamus in the United States Court of Appeals for the Fourth Circuit, claiming that this Court has refused to issue summonses in his case. *See* Appeal No. 19-2136. Apparently, Drake labors under the misconception that he is the only litigant in this busy Court. Indeed, I have been presiding over a criminal trial that began on September 9, 2019, and is still ongoing as of today's date. And, many other cases, civil and criminal, require my attention. Moreover, the Clerk cannot instantaneously prepare the 35 summonses that plaintiff requests.

F.2d 721, 722-23 (4th Cir. 1989). Nevertheless, this Court may dismiss a complaint, or portions of a complaint, sua sponte, where the matters asserted are plainly frivolous. *Smith v. Kagan*, 616 F.App'x 90 (4th Cir. 2015); *see also Chong Su Yi v. Soc. Sec. Admin.*, 554 F.App'x 247, 248 (4th Cir. 2014) (same); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (same). Notably, "dismissal prior to service of process is permissible when a Court lacks subject matter jurisdiction over a patently frivolous complaint." *Smith*, 616 F.App'x at 90; *Chong Su Yi*, 554 F.App'x at 248 (same); *Ross*, 493 F.App'x at 406 (same).

No hearing is necessary to resolve the recusal motion. Local Rule 105.6. For the reasons that follow, I shall deny the recusal motion; I shall dismiss the Complaint in part; and I shall transfer the remainder of the suit to the United States District Court for the Eastern District of Texas.

**Discussion**

**I. The Recusal Motion**

Section 455 of 28 U.S.C. is titled "Disqualification of justice, judge, or magistrate judge." Under § 455, the judge whose objectivity is being challenged by a motion to recuse is the one who should first review the matter and render the disqualification decision.

Section 455(a) focuses on the appearance of impropriety. It states: "Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." The test "embodies an objective standard" and asks "whether an objective, disinterested, lay observer fully informed of the facts . . . would entertain a significant doubt about a judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). The provision is intended to promote confidence in the judiciary. *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 865 (1988).

As the Supreme Court has noted, § 455(a) "deals with the *objective appearance* of partiality." *Liteky v. United States*, 510 U.S. 540, 553 n.2 (1994) (emphasis in *Liteky*). Disqualification is required "only if it appears that [a judge] harbors an aversion, hostility or disposition of a kind that a fair minded person could not set aside when judging the dispute." *Id.* at 558. This objective standard includes not only actual impartiality, but also the appearance of impartiality. *See United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir. 1984). In other words, "[t]he inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987) (internal citation omitted).

Notably, a "presiding judge is not . . . required to recuse [herself] simply because of 'unsupported, irrational or highly tenuous speculation.'" *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) (quoting *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998)). Rather, "[t]he alleged bias must derive from an extra-judicial source [and] . . . *result in an opinion on the merits on a basis other than that learned by the judge from [her] participation in the matter.*" *In re Beard*, 811 F.2d at 827 (emphasis added); *see Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984). Simply put, "[t]he proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality." *In re Beard*, 811 F.2d at 827.

Moreover, 28 U.S.C. § 455(b) enumerates circumstances in which a federal judge "shall" disqualify herself, because partiality is presumed. *See* Richard K. Neumann, Jr., Conflicts Of Interest In *Bush v. Gore:* Did Some Justices Vote Illegally*?*, 16 Geo. J. Legal Ethics 375 at 5 (Spring 2003). For example, § 455(b)(5)(iii) states that a judge shall recuse herself if she has "an

interest that could be substantially affected by the outcome of the proceeding." If such a conflict exists, it cannot be waived. 28 U.S.C. § 455(e).

Under 28 U.S.C. § 144, recusal can be considered whenever a party to a proceeding files a sufficient affidavit stating that the judge has a personal bias or prejudice either against that party or in favor of another party. And, due process may sometimes demand recusal even when a judge "'ha[s] no actual bias.'" *Rippo v. Baker*, ___ U.S. ___, 137 S. Ct. 905, 907 (2017) (per curiam) (citation omitted) (alteration in *Rippo*). In *Rippo*, the Court said, *id.*: "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable.'" (Citation omitted); *see also Williams v. Pennsylvania,* 579 U.S. ___, 136 S. Ct. 1899, 1905 (2016).

In my view, there is no basis for mandatory recusal, nor is there any basis on which a reasonable person might question my impartiality in relation to this litigation. Accordingly, I decline to recuse myself from this litigation.

## II. The Complaint

### A.

Plaintiff lacks standing to raise the generalized claims he has asserted against President Trump, Vice-President Pence, Melania Trump, and Karen Pence As a result, the Court lacks subject matter jurisdiction as to these claims. *Taylor v. Kellogg Brown & Root Servs., Inc.,* 658 F.3d 402, 412 (4th Cir. 2011); *see Bulldog Trucking,* 147 F.3d 347, 352 (4th. Cir. 1998) (a federal court is required, *sua sponte,* to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears."); *see also* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

It is a bedrock principle that Article III of the Federal Constitution requires the federal courts to adjudicate only "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "Indeed, 'no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. __, __, 136 S. Ct. 1540, 1547 (2016)).

Therefore, during the pendency of a case, an actual controversy must exist. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974); *Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 234 (4th Cir. 2019); *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013). Conversely, in the absence of a case or controversy, "the court's subject matter jurisdiction ceases to exist . . . ." *S.C. Coastal Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015); *see Gardner v. GMAC, Inc.*, 796 F.3d 390, 395 (4th Cir. 2015) (same).

"One element of the case-or-controversy requirement" is that a plaintiff must establish standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see Spokeo, Inc.*, 136 S. Ct. at 1547 ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."); *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019) ("The standing doctrine derives from the Constitution's limitation on Article III courts' power to adjudicate 'cases and controversies.') (internal quotation marks and citations omitted). The *Clapper* Court explained, 568 U.S. at 408: "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."

The doctrine of standing consists of two distinct "strands": constitutional standing, pursuant to Article III, and prudential standing. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Of relevance here, "the standing inquiry asks whether a plaintiff ha[s] the requisite stake in the outcome of a case . . . ." *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (citing *Friends of the Earth. Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). Under Article III, "a party invoking the jurisdiction of a federal court [must] seek relief for a particularized injury," which is a requirement that "serves vital interests going to the role of the judiciary in our system of separated powers." *Hollingsworth v. Perry*, 570 U.S. 693, 696 (2013).

In addition to satisfying constitutional standing requirements, a plaintiff must also demonstrate that his claims are not barred by prudential limitations on a federal court's exercise of jurisdiction. *United States v. Windsor*, 570 U.S. 744, 756-57 (2013); *see also*, *e.g.*, *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11; *Doe v. Sebelius*, 676 F. Supp. 2d 423, 428 (D. Md. 2009). Prudential standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11 (citation omitted).

One such limitation is that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation serves to "preclude a court from deciding 'questions of broad social import in cases in which no individual rights will be vindicated'" and to ensure that "'access to the federal courts [is] limited to those litigants best suited to assert the claims.'" *Buchanan v. Consolidated Stores Corp.*, 125 F. Supp. 2d 730, 738 (D. Md. 2001) (quoting *Mackey v. Nationwide Ins. Co.*, 724 F.2d 419, 422 (4th Cir. 1984)).

To establish Article III standing, a plaintiff must satisfy three elements. *Lujan,* 504 U.S. at 560. They are, *id.* (internal quotation marks and citations omitted):

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014); *Clapper*, 568 U.S. at 409; *Friends of the Earth, Inc.*, 528 U.S. at 180-81; *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 226-27 (4th Cir. 2019); *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017); *Cahaly v. Larosa*, 796 F.3d 399, 406 (4th Cir. 2015); *Lane v. Holder*, 703 F.3d 668, 671 (4th Cir. 2011); *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

To meet the injury-in-fact requirement, a plaintiff must allege that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural and hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560); *see South Carolina*, 912 F.3d at 726. A threatened injury can also satisfy Article III standing, although "not all threatened injuries constitute an injury-in-fact." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017); *South Carolina*, 912 F.3d at 726.

The Fourth Circuit recently explained in *Deal*, 911 F.3d at 189, that the two concepts—actual, ongoing injury or imminent injury—are "disjunctive." An "allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony*, 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 n.5); *see Lujan*, 504 U.S. at 564; *So. Car.*, 912 F. 3d at 726. In contrast, "'[a]llegations of *possible* future

8

injury' are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). This requirement serves "to ensure that the alleged injury is not too speculative for Article III purposes." *Wikimedia Found.*, 857 F.3d at 208.

In some cases, it is enough that there is a "substantial risk" of a harm occurring that "prompt[s] plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper*, 568 U.S. at 414 n.5. But, in such a case, the plaintiff cannot rely on an "attenuated chain of inferences" nor "on speculation about 'the unfettered choices made by independent actors not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 562). Nor can plaintiffs "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

"For an injury to be traceable, 'there must be a causal connection between the injury and the conduct complained of' by the plaintiff." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). However, "the defendant's conduct need not be the last link in the causal chain[.]'" *Id.*; *see also Lexmark Int'l, Inc.*, 572 U.S. at 134 n.6 ("Proximate causation is not a requirement of Article III standing[.]"). "[W]here the plaintiff suffers an injury that is 'produced by [the] determinative or coercive effect' of the defendant's conduct 'upon the action of someone else,'" the traceability requirement is satisfied. *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand and Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

Plaintiff's broadly stated assertions identify no particularized harm he has suffered as a result of the actions challenged. He fails to allege how he has been injured by the asserted failure to heed his visions. Moreover, he fails to allege any causal connection between any injury alleged and the challenged conduct. In sum, Drake lacks standing to assert these claims on behalf of the

citizens of the United States. And, he has failed to allege any personal injury to himself resulting from the policies or lack of action of these defendants.

B.

Drake complains that the United States Supreme Court "has never agreed to hear and allow to argue a pro se litigant's case who was black." ECF 1 at 24. He names as defendants Joanna Breyer, Virginia Lamp Thomas, Martha-Ann Alito, Marie Louise Gorsuch, Jane Roberts, and Ashley E. Kavanaugh.

Plaintiff states that he was injured on a highway in Texas, and that the United States District Court for the Eastern District of Texas refused to accept his pleadings. *Id*. Moreover, plaintiff alleges that the Supreme Court of the United States has denied his writ, because he is not white and he is self-represented. *Id*. Recognizing that the United States Supreme Court justices are entitled to immunity, "Plaintiff is suing their spouses (those who have spouses) holding them responsible for the judge spouses behavior as described in this petition." *Id*.

According to plaintiff, the conduct of the Supreme Court justices amounts to gross negligence and, because they cannot be sued, he has named their spouses. He states, *id.* at 25: "It is the same principle that parents are responsible for their children's actions, but reversed." Plaintiff contends that the justices did not read his writ of certiorari but rather their law clerks did. *Id*. at 26. In Drake's view, it is negligence, breach of duty, and a violation of his due process rights for the justices not to provide a reason for the denial of the writ and for failing to issue writs filed by African American citizens and self-represented litigants. *Id*. at 26-33. Further, he alleges that the justices' wives violated his First Amendment right to petition the courts and his rights under 42 U.S.C. §1981 by condoning the actions of the lower courts. *Id.* at 33.

As noted, Drake also complains that the judges of the Eastern District of Texas are "racially motivated." *Id.* at 70. Recognizing that the named judges are immune from suit, plaintiff names as defendants the judges' spouses: Sergio Antoio Moreno, Judy Sullivan Folsom, Melva Milam Bush, Sherry Sullivan Gilstrap Tomasz Nowak, Livia Tanyel Harrison Bennet, Stacy Lawrence Hanks, Olive Allen Hughes, Jordan Elizabeth Lake, Leigha Simonton Horan, Andrea Erika Bemporad, Leslie F. Johnson, Michael Edwin Craven, Mary Elizabeth Brooks, Joanna Breyer, Virginia Lamp Thomas, Martha Ann Alito, Marie Louise Gorsuch, Jane Roberts, Ashley E. Kavanaugh. *Id.* at 71-74.

As plaintiff correctly observes, his claims against individual judges may not proceed. Judges are entitled to absolute immunity. The doctrine of judicial immunity shields judges from monetary claims against them in both their official and individual capacities. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). Judicial immunity is an absolute immunity; it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely. *Id.* at 11. An act is still judicial, and immunity applies, even if the judge commits "'grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)). Moreover, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump,* 435 U.S. at 355-56; *see Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly); *Green v. North Carolina*, No. 4:08-CV-135-H, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010).

Plaintiff's efforts to hold the judges accountable for the conduct alleged by suing their spouses is equally unavailing. The complaint does not allege any personal participation by the

judges' spouses. Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Plaintiff does not attribute any action or inaction to any of the named judicial spouses that resulted in the denial of his constitutional rights. Rather, he seeks to skirt the issue of judicial immunity by naming the judges' spouses. These claims may not proceed.

## C.

Plaintiff asserts claims regarding the injury he sustained on September 24, 2016. Apparently, he previously attempted to litigate these claims in the Eastern District of Texas. ECF 1 at 38; *see Drake v. Travelers Casualty Insurance Co., et al*, Civil Action No. 2011-516 (E.D. Tex.). He states that while he was driving along I-20 an object struck and broke his windshield. *Id*. There were no vehicles in front of plaintiff, but men were working on a bridge under which plaintiff had just driven. *Id*. Plaintiff returned to the bridge and spoke with Jeff Stovall, who advised "that East Texas Bridge[, Inc. ("ETBI")] would take care of all of the damages relating to the incident." *Id*. Plaintiff was treated for an injury to his eye caused by the accident. *Id*. at 39.

ETBI was working on the bridge for the Texas Department of Transportation and the work benefited and was carried out within the City of Hallsville, Texas in Harrison County, Texas. *Id*. at 40. Plaintiff alleges that ETBI, the Texas Department of Transportation, the City of Hallsville, and the County of Harrison were negligent and breached their duty of care and also inflicted emotional distress. *Id*. at 42-45, 75. Additionally, plaintiff alleges that ETBI, the Texas Department of Transportation, the City of Hallsville, and the County of Harrison denied him equal protection and otherwise deprived him of his rights under 42 U.S.C. §1981. *Id*. at 56. Further, Drake asserts a claim "against Defendants ETBI and Travelers for breach of implied contract under Texas direct action claim." *Id*. at 59. And, he alleges additional state claims of malice, "special

12

defect, common law claim and tort claims" against Defendants ETBI, the Texas Department of Transportation, the City of Hallsville, and Harrison County. *Id.* at 61-62.

As to plaintiff's claims against Harrison County, the City of Hallsville, East Texas Bridge, Inc., Travelers Indemnity Company, Travelers Indemnity Co. of America, and Texas Department of Transportation, this Court is not the proper venue for these claims, as the events complained of occurred in Texas and the defendants are citizens of Texas, or are Texas corporations or Texas government agencies. Under 28 U.S.C. § 1391(b), "[a] civil action may be brought in -- (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Section 1406 of Title 28 of the United States Code pertains to the "cure or waiver of defects" of venue. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.4 (4th Cir. 1993). Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Section 1406 has been given an "expansive reading" and is interpreted to afford "broad remedial relief where there are impediments to an adjudication on the merits," including but not limited to instances where venue is improper. *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988). Thus, the Fourth Circuit interprets the statute to "authorize[] the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which

13

constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Id.* at 258; s*ee also Sewell v. Commodity Futures Trading Comm'n*, PX-16-2457, 2017 WL 1196614, at \*4 (D. Md. Mar. 31, 2017). (electing not to transfer a case because lack of subject matter jurisdiction made transfer futile).

"Whether a transfer would be in the interest of justice" is "committed to the discretion of the trial court." *Sewell*, PX-16-2457, 2017 WL 1196614, at \*4. In determining whether transfer is in the interest of justice, courts have considered whether the statute of limitations has run since the commencement of the action; if the defendant has misled the plaintiff on facts relevant to venue; if transfer would be more efficient or economical than dismissal; and if plaintiff's belief that venue was proper was in good faith and reasonable. Charles Alan Wright & Arthur R. Miller, 14D FEDERAL PRACTICE & PROCEDURE § 3827 (4th ed. 2016).

Courts in this district favor transfer over dismissal unless "plaintiff is harassing the defendants or acting in bad faith or forum shopping." *Ademiluyi v. Nat'l Bar Ass'n*, GJH-15-02947, 2016 WL 4705536, at \*3 (D. Md. Sept. 8, 2016; *see also Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 473 (D. Md. 2002) ("Courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants . . . ."). I am mindful that, in dismissing *Drake v. Travelers Casualty Insurance Co., et al*, Civil Action No. 2011-516 (E.D. Tex.), the court found plaintiff to be a vexatious litigant and directed that he could not proceed in forma pauperis, without leave of court. *Id*., ECF 14 at 5. However, plaintiff has paid the filing fee. Therefore, this portion of his Complaint shall be transferred to the Eastern District of Texas.

A separate Order follows.

October 22, 2019  /s/
Date  Ellen L. Hollander
United States District Judge